**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ED PENNING,

Plaintiff,

v.

THE DAILY CALLER, INC.,

Defendant.

Case No. 24-CV-02662-JDB

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Defendant The Daily Caller, Inc. ("Daily Caller") respectfully submits this Reply Memorandum in support of its Motion to Dismiss (ECF No. 9).

## INTRODUCTION

Plaintiff's Opposition (ECF No. 12) relies primarily on decisions handed down by courts in VPPA cases involving defendants that either rented or sold video content to customers, or offered customers paid subscriptions to video-only content. In those cases, the courts had little difficulty finding that the videos at issue were themselves the defendants' products, subjecting those defendants to the VPPA as "video tape service providers" (or VTSPs, for short).

The facts Plaintiff alleges in his Complaint, however, make clear that this case is **not** like the others. Unlike most other VPPA defendants, Daily Caller is a news organization whose core product is its **written** news content. Plaintiff does not allege—because he cannot—that Daily Caller sells or rents any video content as a standalone product. Its website visitors cannot pay to watch a specific video on demand, nor can they purchase a subscription that exclusively provides video content. Rather, as shown in the Complaint, the only way a website visitor can watch one of the handful of documentaries on Daily Caller's website is by paying for a premium subscription to Daily Caller's written news content, which provides, as one of the added benefits

(or perks), access to limited video content and merchandise, among other things, depending on the subscription tier.

As reflected in the Opposition, Plaintiff cannot cite any caselaw (let alone binding caselaw) that would justify expanding the scope of the VPPA by sweeping into its purview any company, including Daily Caller, that might decide, for marketing reasons or otherwise, to incentivize their customers to pay more for a subscription to that company's core non-video product by bundling it together with merchandise, video, or other perks that are not otherwise part of its core offerings. Offering perks, alone, is not grounds for finding that a company is "in the business of" selling each of those items, especially not as that phrase is used under the VPPA. *See, e.g.*, *Pileggi v. Wash. Newspaper Publ'g Co.*, No. CV 23-345 (BAH), 2024 WL 324121, at *8 n.7 (D.D.C. Jan. 29, 2024) (noting that "courts have rejected attempts to characterize 'any company that creates its own video content, however ancillary to the company's purpose, [as] "engaged in the business of" delivering audio visual content'" (quoting *Markels v. AARP*, No. 22-cv-5499 (YGR), 2023 WL 6411720, at *3 (N.D. Cal. Aug. 29, 2023)).

In any event, Plaintiff's VPPA claim against Daily Caller independently fails because, conclusory allegations aside, Plaintiff has not refuted Daily Caller's argument that his Complaint fails to allege that Daily Caller ever possessed his Facebook ID such that it is plausible that Daily Caller could have transmitted that data, together with his video viewing history, to Meta. Daily Caller could not have transmitted information it never possessed.

Finally, Plaintiff fails to adequately respond to Daily Caller's contention that his Complaint omits a key factual allegation on which his legal theory hinges. Specifically, Plaintiff has failed to allege that his Facebook profile is (1) public, not private, and (2) includes sufficient information for an ordinary person to determine that the Facebook profile, in fact, belongs to

Plaintiff. Without those allegations, Plaintiff simply cannot establish, as he must to state a claim under the VPPA, that an ordinary person—not even one whom, under Plaintiff's theory, has the extraordinary know-how required to de-hash the data about Plaintiff that was allegedly transmitted to Meta—could use Plaintiff's Facebook ID to associate any video viewing information captured by Meta Pixel with Plaintiff.

For these reasons and those set forth more fully in Daily Caller's Motion, the Court should dismiss Plaintiff's Complaint.

## ARGUMENT

### I. Allegations that Daily Caller—whose core business is delivering written news content—also sells "access to" video content as a perk for Patriots Monthly members does not transform Daily Caller into a VTSP.

As an initial matter, Plaintiff does not dispute—nor can he—that the Website referenced in his Complaint establishes that the Website's owner, Daily Caller, is primarily in the business of reporting the news **in writing** or that the Website is populated almost exclusively with **written news content**, rather than video content. Although Plaintiff alleges that Daily Caller "sells access" to some prerecorded video materials on the Website, *see, e.g.*, Compl. ¶ 48, he does **not** go as far as to allege that Daily Caller offers Website visitors the option to rent or buy any video content, or to pay for a subscription that grants its members access solely (or even primarily) to video content—again, because he cannot.

Rather, as Plaintiff acknowledges, the limited video content posted on Daily Caller's Website is offered as but an exclusive perk or benefit to members of Daily Caller's top subscription tier, called "Patriots Monthly," which, importantly, includes access not just to the video content, but also many other perks. *See* Compl. ¶ 51. Daily Caller provides these perks together with its core offering—i.e., written news content—to incentivize its readership to pay a premium for Daily Caller's content, just like it incentivizes users to sign up to be "Founders

Club" members by bundling its core written news offerings with an "Exclusive Tucker Mug" and "Gold Member Card." *See id.* The perks (or incentives) Daily Caller offers its users to upgrade their subscription plan could have been anything—it just happens that, in this instance, Daily Caller chose to offer, as just one of those perks, a small number of documentaries. That, alone, is not sufficient to transform Daily Caller into a "video tape service provider" (VTSP) under the VPPA, just like offering a coffee mug does not transform Daily Caller into a merchant of kitchenware.

In his opposition, Plaintiff argues that he satisfied his burden of establishing that Daily Caller is a VTSP by merely alleging that it is "in the business" of "sell[ing] access to various types of pre-recorded videos." *See* Opp. at 5. Even if this conclusory allegation were enough in theory to satisfy Plaintiff's burden (it is not), it suffers from a more substantive defect: it supports, at most, a finding that Daily Caller sells "access to" pre-recorded videos—a distinction with a material difference. *See id.* at 2, 5, 6, 10 (repeatedly alleging that Daily Caller sells "access" to documentaries).

For Plaintiff to establish that Daily Caller is a VTSP, he must allege, at a minimum, that Daily Caller is the business of "selling, renting, or delivering" video content. Mot. at 13. Selling a video and selling "access" to a video are two distinct things. Courts have recognized that distinction when holding, on the one hand, that online content providers comparable to Blockbuster are VTSPs, while holding, on the other, that online sellers of movie tickets, which, do not sell or rent movies but rather sell access to them, do not qualify as VTSPs. *Compare In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) (finding that Hulu, an online movie streaming platform, is a "video tape service provider"), *with Walsh v. Cal. Cinema Invs. LLC*, No. 2:23-cv-09608, 2024 WL 3593569, at *5 (S.D. Cal. July 29, 2024) (finding that "the

mere presence of [movie] trailers" on the website of a cinema company selling movie tickets online "is insufficient to establish that [the company is] delivering audio visual materials to a degree that would be in the business of doing so"). Here, as acknowledged in the Complaint, Daily Caller only sells "access" to videos as just one component of its Patriot Monthly membership bundle, and that is not enough to transform Daily Caller into a VTSP.

Even if Plaintiff could establish that Daily Caller rented, sold, or delivered video content, his argument that Daily Caller is a VTSP would still fail. Courts have held that to be "in the business" of doing any of those things, it must be shown that the defendant's website is "significantly tailored" for providing customers with video content. *See In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017). There is no dispute, here, that Daily Caller's website does not permit users to buy, rent, or even subscribe to specific video content. Instead, to see video content, a user must first become a Patriot Monthly member, which comes with Daily Caller's core written news offerings, a coffee mug, a gold member card, access to live chat, and access to Patriot's war room. *See* Compl. ¶ 51. Indeed, as acknowledged by Plaintiff in his Opposition, when someone who is not a Patriots Monthly member attempts to access a documentary on the Website, they are presented with a paywall that requires them to pay to "continue **reading**" and "**also**, enjoy the **many benefits** of Patriots Membership," including ad-free browsing, documentaries, app access, newsletters:




*See* https://dailycaller.com/stream/american-squatter/ (emphasis added), as referenced by Plaintiff in his Opposition at page 7. This shows that Daily Caller has not tailored its website to sell, rent, or deliver video content. The Website is tailored to Daily Caller's core readership, giving them premium membership options and notifying them of the benefits that come with those memberships should they choose to upgrade.

Plaintiff's allegation that Daily Caller "sells access to videos **as part of** its business model," Opp. at 10 (emphasis added), does not move the needle in Plaintiff's favor either. Courts have held that companies who post marketing videos on their website are not VTSPs even when marketing is clearly part of their business model. *See, e.g.*, *Cantu v. Tapestry, Inc.*, 697 F. Supp 3d 989, 995 (S.D. Cal. Oct. 3, 2023). In many respects, Daily Caller's documentaries function as just that—part of the company's marketing strategy for attracting users in a competitive market to pay a premium for Daily Caller's written news content.

Plaintiff's attempt to construe Patriots Monthly as a video-only subscription based on the mere existence of a lower tier membership called "Readers Pass," which has "only text-based content," is unfounded. Opp. at 7. To start, it ignores the fact that Daily Caller offers another subscription tier, called "Founders Club," where subscribers also pay for only text-based content (including everything in Readers Pass), but with additional perks. And yet nothing in the "Founders Club" name reflects the type of content (text or audiovisual) included with that membership. Nor does the name "Patriots Monthly." Had Daily Caller named its premium tier membership "Patriots Video," Plaintiff's argument might be more convincing. But, of course, Daily Caller did not choose that name—because Patriots Monthly is **not** a video-based subscription. Nor does it provide videos "on-demand," as Plaintiff suggests. *See id.* at 8–9. Rather, as evidenced by the allegations in the Complaint, Patriots Monthly provides users access to all of its text-based content, plus everything offered to Founders Club members, and more. While videos are included as a benefit of that membership tier, it is not part of Daily Caller's core news offering. Plaintiff has not alleged otherwise.

To the extent Plaintiff suggests that Daily Caller's income from the Patriot Monthly subscription is proof that selling video content is a "central aspect" of Daily Caller's business model, that argument fails for a number of reasons. To start, and as Plaintiff emphasizes in its own Opposition, charging money for video content is neither required nor sufficient to render an entity "in the business" of providing that video content. *See id.* at 10 (citing *Jackson v. Fandom, Inc.,* No. 22-cv-04423-JST, 2023 WL 4670285, at *3 (N.D. Cal. July 20, 2023)). Additionally, Plaintiff does not allege that the revenue Daily Caller earns from Patriot Monthly compared to its other paid subscription tiers comprises a significant portion of the company's revenue, let alone

that the revenue it generates is attributable to the videos themselves, as opposed to Daily Caller's written news content and the additional, non-video perks offered alongside them.

In any case, relying on profit comparisons to determine the "focus" of an organization's business is illogical in the context of a news company that provides the majority of its **actual** product—written news content—for free. Mot. at 2–3. Furthermore, that only one of Daily Caller's subscriptions offers video while they **all** offer written news content, *see* Compl. ¶ 51, is further proof that Daily Caller is unequivocally **not** in the business of selling or renting videos, and that it has thrown in the documentaries on its Website as merely a perk for its highest-paying customers.

At its core, Plaintiff's argument is nothing more than an overly complicated articulation of a simple—albeit legally unfounded—proposition: Any business that offers a video in combination with the sale of a non-video product subjects itself to the VPPA. Plaintiff cites *Ghanaat v. Numerade Labs, Inc.* as support for that proposition. *See* Opp. at 6 (citing 689 F. Supp. 3d 714, 719 (N.D. Cal. 2023)). But *Ghanaat* is easily distinguishable. To start, the videos at issue in that case were educational content published by an online educational technology site that were **not** offered as mere perks limited to a subset of the defendant's customer base, but were themselves the product. 689 F. Supp. 3d at 719. More importantly, unlike here, the defendant in *Ghanaat* did not dispute that providing video content was a focus of its business; it merely argued that the substance and duration of the videos differentiated them from the "VHS tapes of feature films and television" Congress had in mind when drafting the VPPA. *Id.* at 720. Thus, the court's decision in *Ghanaat* has no application here.

Plaintiff next argues that "courts routinely find similar allegations sufficiently allege that defendants are 'engaged in the business' of renting, selling, or delivering videos." Opp. at 7.

Plaintiff cites *Salazar v. National Basketball Association* to argue that the Second Circuit has "conducted a thorough excavation of the VPPA's language and legislative history" and concluded that 'video tape service provider' "ought not be construed narrowly." *Id.* (citing 118 F.4th 533, 548 (2d Cir. 2024)). But Plaintiff's characterization of Daily Caller as a "video tape service provider" is a stretch even under *Salazar*'s non-binding observation that, "by its plain terms, the [VPPA] applies equally to a business dealing primarily in audiovisual materials (think Blockbuster) and one dealing in primarily non-audiovisual materials (think a general store that rents out a few movies)." *Id.* at 45. This is because, unlike the "few movies" the general store rents out in *Salazar*'s hypothetical, the documentaries here are not offered to all customers as an actual product for sale—they are offered as an incentive for customers to pay more for Daily Caller's written news content, which is the company's primary offering. Here, the situation is akin to the general store charging a higher price for a vat of popcorn because it has been bundled together with extras, such as a stuffed animal and a DVD—a marketing decision that does not, under any standard, render the store "substantially involved in the conveyance of video content to consumers [and] also significantly tailored to that purpose" such that it could be subject to liability under the VPPA. *See In re Vizio, Inc.*, 238 F. Supp. 3d at 1221.

Plaintiff's reliance on *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 156 (S.D.N.Y. 2023), is also misplaced. Unlike Daily Caller, which delivers the news almost exclusively via articles, opinions pieces, and other written media, the website at issue in *Golden* was an extension of the popular television show, the Today Show, which delivers a wide variety of content primarily by video before repurposing and posting it online. The *Golden* court's determination that the Today Show's website was a VTSP is therefore of no consequence here.

Plaintiff's attempts to distinguish the cases on which Daily Caller's Motion relies also miss the mark. Plaintiff argues, for example, that *In re Nickelodeon Consumer Privacy Litigation* is only instructive in cases involving the providers of tracking technologies, like Meta, and not the users of those technologies, like Daily Caller. Opp. at 9 (citing 827 F.3d 262, 267 (3d Cir. 2016)). But the defendant's identity in *In re Nickelodeon* was irrelevant to that court's observation that the VPPA's legislative history shows that Congress had a "quite narrow" purpose in passing the legislation, *see* 827 F.3d at 284—a purpose that did not include penalizing entities that offer videos as mere perks incidental to their primary product.

Plaintiff further argues that *In re Vizio, Inc.* is "a helpful citation for Plaintiff's position" solely because that court found that the defendant did meet the narrow standard for a VTSP. 238 F. Supp. 3d 1204, 1221–22 (C.D. Cal. 2017). Setting aside the fact that Plaintiff's own brief is rife with citations to cases that did not hold in the plaintiffs' favors, *see, e.g.*, Opp. at 6 (citing *Ghanaat*, 689 F. Supp. 3d at 722 (dismissing plaintiff's VPPA claim)), 8 (citing *Golden*, 688 F. Supp. at 168 (same); *Sellers v. Bleacher Rep., Inc.*, No. 23 Civ. 00368 (SI), 2023 WL 4850180, at *6 (N.D. Cal. July 28, 2023) (same)), Plaintiff overlooks that while the *Vizio* court's holding was in favor of the plaintiff there, its **reasoning** supports a holding **against** Plaintiff here. Additionally, Plaintiff conveniently ignores one of *In re Vizio*'s other holdings: that a company only "peripherally or passively involved in video content delivery"—like Daily Caller—is not "in the business" of renting or selling video content under the VPPA, *see* 238 F. Supp. 3d at 1221, similar to how Plaintiff ignores Daily Caller's point that even the Federal Government's interpretation of the VPPA seems to conflict with how he is asking the Court to apply it here. *See* Mot. at 3.

Simply put, Plaintiff cannot establish that Daily Caller, whose primary business is publishing the news in written form online, is a VTSP merely because the company included a limited amount of video content, together with ad-free browsing, a coffee mug, and other items, as perks for premium subscribers that are merely ancillary to Daily Caller's core written news content. The Court should grant Daily Caller's motion and dismiss Plaintiff's Complaint.

## II. Plaintiff does not meaningfully address his failure to allege that Daily Caller ever possessed his Meta-issued FID, such that Daily Caller could have, even in theory, transmitted both his video viewing information and FID to Meta.

Plaintiff does not dispute that, to state a viable VPPA claim, he must allege that **Daily Caller**, not some other person or entity, transmitted to Meta his video viewing information **together with** information sufficient to identify Plaintiff. Plaintiff claims he satisfied that burden by alleging that Daily Caller transmitted his information directly to Meta. However, Plaintiff fails to squarely address Daily Caller's contention that, conclusory allegations aside, his Complaint does not allege that Daily Caller ever had access to, collected, or otherwise maintained control over his identifying information—here, the FID that Plaintiff admits Meta, not Daily Caller, assigned to him—such that Daily Caller could have, in the first instance, sent that identifying information to Meta. *See* Mot. at 14.

Plaintiff attempts to brush Daily Caller's argument aside by noting that Daily Caller did not cite any cases "endorsing" that specific argument. But the fact that Daily Caller is raising an argument that, until now, has not been squarely addressed by courts under comparable circumstances does not mean that the argument is wrong or should simply be disregarded—especially, where, as here, Plaintiff cannot cite any cases rejecting the argument, and where the argument's logic is irrefutable: Daily Caller could not possibly have transmitted information to Meta that Daily Caller never possessed in the first place.

Plaintiff's contention that Daily Caller's argument "has been overwhelmingly turned away by Courts considering similar contentions" can be set aside quickly, because he does not cite any cases to support that proposition. Opp. at 13. Instead, Plaintiff includes a citation to page 15 of Daily Caller's Motion to Dismiss, on which Daily Caller cites two cases, both of which support Daily Caller's position, including, most notably, *In re Hulu Privacy Litigation*. While true that *In re Hulu Privacy Litigation* was, as Plaintiff points out, decided on summary judgment, Plaintiff has not identified any material differences between the facts the court relied on in that case to reach its decision and the non-conclusory facts Plaintiff alleges in his Complaint here. There are none. Thus, the holding in *In re Hulu Privacy Litigation* is at the very least instructive.

Contrary to what Plaintiff suggests, Daily Caller's argument was not addressed in *Belozerov*. The issue presented in *Belozerov* was not whether the plaintiff adequately alleged that the defendant ever had possession of the plaintiff's FID cookie (the argument Daily Caller has raised here), but rather whether the defendant or Facebook was responsible for putting the Meta Pixel code on the defendant's website. *See* 646 F. Supp. 3d 310, 314–15 (D. Mass. 2022). Daily Caller does not contend that Plaintiff failed to adequately allege that Daily Caller installed the Meta Pixel on its Website; Daily Caller's argument relates to an entirely distinct issue. Plaintiff's reliance on *Belozerov* is a red herring.

Plaintiff's reliance on *Czarnionka v. Epoch Times Association, Inc.* is also unavailing. Although it appears the defendant in *Czarnionka* raised an argument similar to the one Daily Caller raises here, the court based its ruling in that case on fact allegations that are materially different than those presented here. In *Czarnionka*, for example, the defendant relied on a "MARKUP article cited by Plaintiff in the Complaint," and the court did not find any

contradictions between that article and the plaintiff's allegation that the defendant itself transmitted PII to Facebook. No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022). Here, in contrast, Daily Caller relies on Meta's own documentation, which is incorporated by reference in Plaintiff's Complaint, to refute any plausible inference that Daily Caller ever had access to Plaintiff's FID cookie in first place, such that it could have, even in theory, transmitted that data to Meta.

It should be telling that, rather than responding directly to Daily Caller's argument, Plaintiff danced around it, addressing instead strawman arguments of his own creation, such as the one that incorrectly suggests that Daily Caller's Motion rests primarily on a semantical argument about Plaintiff's use or non-use of the word "server" in the Complaint. *See* Opp. at 12. That is clearly not the crux of Daily Caller's argument. To the contrary, Daily Caller's argument is premised on a simple and straightforward question: Has Plaintiff adequately alleged that Daily Caller ever had access to his FID such that it could have, even in theory, transmitted the FID to Meta? Plaintiff does not directly answer **that** question, because the answer is plainly "no."

Nor can Plaintiff amend his Complaint to allege, in good faith, that Daily Caller ever had access to his FID. That is because, notwithstanding Plaintiff's attempt to oppose Daily Caller's request for judicial notice of Meta documents, he certainly cannot disavow the documents he incorporates in his own Complaint—including, ironically, Meta documents—about the workings of Meta Pixel, *see* Compl. ¶ 11 n.20 (citing https://developers.facebook.com/docs/meta-pixel/get-started/), or the links in those documents describing cookies "as small pieces of text used to store information on web **browsers**." (Emphasis added) (quoted reference material available by clicking on the "Facebook cookies" hyperlink in the first paragraph of the Meta document cited in Plaintiff's complaint); *see also In re Hulu Priv. Litig.*, 86 F. Supp. 3d at 1097 (noting that "a

Facebook user's identity" is "contained in the c_user cookie," whereas video viewing information is contained in a separate "watch-page address"). If, as Plaintiff alleges, Plaintiff's FID is stored in a cookie, *see* Compl. ¶ 58, and cookies are stored on web browsers and not on web servers like the one hosting the Website, Daily Caller could not have possibly transmitted Plaintiff's FID directly to Meta, because, again, it never possessed that information to begin with.

To be clear, Daily Caller is not arguing that the Court should relax the standard that applies under Rule 12(b) and disregard Plaintiff's well-pleaded allegations. Daily Caller is arguing, instead, that the Court should enforce the well-established requirement that a plaintiff cannot survive dismissal under Rule 12(b) by relying on conclusory allegations. *See, e.g.*, *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) ("[O]n a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." (cleaned up)). Here, Plaintiff's allegation that Daily Caller transmitted both his video viewing information and personally identifying information to Meta—using language that closely parrots one of the legal elements of his VPPA claim—is conclusory in nature and should be disregarded. While Plaintiff may be able to remedy this by amending his Complaint to allege that Daily Caller possessed his FID, Daily Caller submits he does not have a good faith basis for such an allegation—which is likely why that basic information did not make its way into in his detailed, 22-page Complaint in the first instance. Either way, based on the non-conclusory allegations asserted in the Complaint currently before the Court, Plaintiff's VPPA claim should be dismissed.

## III. Plaintiff's Opposition fails to identify any non-conclusory allegations sufficient to establish that an ordinary person would be able to identify him using his FID or even the Facebook profile to which that FID is assigned.

As an initial matter, Plaintiff argues that the Court should decline to apply the "ordinary person" standard to determine whether Plaintiff has adequately alleged that the information Daily

Caller purportedly disclosed to Meta—specifically, his FID—was "personally identifying information" as required to state a viable VPPA claim. Opp. at 18–19. He bases his argument in part on the fact that the "ordinary person" standard has not yet been adopted by the D.C. Circuit "or any other binding authority." *Id.* at 19–20. This, of course, glosses over the fact that there are currently no VPPA decisions that are binding on this Court.

In any case, Plaintiff argues that the Court should adopt the standard set forth by the First Circuit in *Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016), rather than the Third Circuit's ordinary person standard. Other courts faced with this issue, including the Ninth Circuit, have opted for the "ordinary person" standard, because it "better informs video service providers of their obligations under the VPPA." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (comparing the First Circuit's *Yershov* standard and the Third Circuit's "ordinary user" standard and adopting the latter). Indeed, as recognized in cases like *Czarnionka*, which Plaintiff cites favorably in his opposition, *see* Opp. at 19, "a majority of courts" have rejected the First Circuit's *Yershov* standard and adopted a "narrower view" of the VPPA. 2022 WL 17069810, at *2.

Courts favor a narrow construction of the VPPA because the statute's plain language supports it. The VPPA's disclosure requirement is framed based on "the perspective of the disclosing party" and "looks to what information a video service provider discloses, not to what the recipient of that information decides to do with it." *Eichenberger*, 876 F.3d at 985. What qualifies as "personally identifiable information" ("PII") under the statute "must have the same meaning without regard to its recipient's capabilities." *Id.* As noted by the *Eichenberger* court, "[h]olding otherwise would make '[t]he lawfulness of [a] disclosure . . . depend on circumstances outside of [a video service provider's] control.'" *Id.* (citing *Mollett v. Netflix, Inc.*,

795 F.3d 1062, 1065 (9th Cir. 2015)). The Third Circuit's "ordinary user" standard is not only supported by the VPPA's plain language, it resolves the above-referenced concerns about pegging the definition of PII to the recipient's varying capabilities. This Court should adopt the majority approach based on its sound reasoning and apply the ordinary person standard here.

In its Motion, Daily Caller identified two independent reasons that Plaintiff's allegations fail under the "ordinary person" standard. The first is that Meta's pixel documentation—which, again, Plaintiff cites in support of his own allegations, *see supra* p. 11—makes clear that Meta's code hashes information about users' interactions with websites before Meta receives it, rendering the information useless to any ordinary person. *See* Mot. at 8.[1] It is simply not plausible that an ordinary person would know how to convert Plaintiff's **hashed** FID into a useable format and then enter it into a specific URL in order to access Plaintiff's Facebook profile.

However, even assuming an "ordinary person" were endowed with such extraordinary know-how, Plaintiff's claim would still fail, because, one again, his legal theory relies on factual predicates that Plaintiff's allegations fall short of establishing—namely, whether his Facebook

[1] Plaintiff takes issue with Daily Caller's citation to Meta's documentation about Meta's own pixel and Facebook, arguing that "[c]ourts regularly reject similar attempts to incorporate information outside the pleadings." Opp. at 13 (citing *Christopherson v. Cinema Ent. Corp.*, No. 23-CV-3614 (JWB/LIB), 2024 WL 1120925, at *4 (D. Minn. Mar. 6, 2024)). In doing so, Plaintiff not only ignores that he cited Facebook's website in his own pleadings, *see* Compl. ¶¶ 43 n.19, 45 n.20, 47 n.22, but also that, as Daily Caller explains in its Motion, the Court may consider the documents attached as exhibits or incorporated by reference in the Complaint, as well as "matters about which the Court may take judicial notice," including websites, that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See* Mot. at 9–10. Meta's documentation about Meta's products falls into that category. Furthermore, Plaintiff's reliance on *Christopherson* is misleading, as the defendant in that case did not seek judicial notice as Daily Caller has here. *See* No. 23-CV-3614 (JWB/LIB), ECF No. 19.

profile is set to public (like Mark Zuckerberg's is), such that any information it contains is accessible to public using the URL referenced in the Complaint, and, if so, whether his profile includes information capable of being used to identify him, let alone differentiate him from any other Ed Penning who has a Facebook profile. Common sense dictates that if Plaintiff did not populate his Facebook profile with accurate identifying information, an ordinary person with access to Plaintiff's profile would not be able to identify him. *Cf. Kesten v. Broad. Music, Inc.*, No. 20-CV-8909 (LJL), 2021 WL 1740806, at *2 (S.D.N.Y. Mar. 3, 2021) ("[A]nyone can make a Facebook profile using real, fake, or incomplete information, and thus, there is no way for the Court to confirm whether the [Facebook profile bearing the defendant's name] ... is in fact the ... [d]efendant to be served." (quoting *Fortunato v. Chase Bank USA, N.A.*, No. 11 CIV. 6608 JFK, 2012 WL 2086950, at *2 (S.D.N.Y. June 7, 2012))). Conclusory allegations aside, Plaintiff has not pled with the requisite specificity that his Facebook profile included personally identifiable information—a point not contested in the Opposition—and thus, Plaintiff's VPPA claim fails. *See Ghanaat*, 689 F. Supp. 3d at 720 (dismissing VPPA claim where "plaintiffs' allegations [were] inadequate because they [did] not allege their Facebook pages contain[ed] any personal information, such as their names or email addresses"); *Smith v. Trinity Broad. of Texas, Inc.,* No. 8:24-CV-01046-JVS-ADS, 2024 WL 4394557, at *2 (C.D. Cal. Sept. 27, 2024).

## CONCLUSION

For the reasons explained above and in its Memorandum of Points and Authorities in support of its Motion to Dismiss, Daily Caller respectfully requests that the Court dismiss, with prejudice, Plaintiff's Complaint for failing to plead facts sufficient as a matter of law to state a claim for relief.

Respectfully submitted,

BALLARD SPAHR LLP

January 24, 2025

*/s/ Lauren P. Russell*
Lauren P. Russell (#1697195)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
russelll@ballardspahr.com

J. Matthew Thornton (admitted *pro hac vice*)
2000 IDS Center, 80 South 8th Street
Minneapolis, MN 55402-2119
(612) 371-6207
thorntonj@ballardspahr.com

*Counsel for Defendant The Daily Caller, Inc.*